1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7

8   ORACLE CORPORATION, ET AL.,          No. C 11-00910 JCS

9          Plaintiffs,                   **ORDER GRANTING IN PART AND
                                          DENYING IN PART PLAINTIFFS'**
10         v.                            **MOTION TO DISMISS AND STRIKE
                                          DEFENDANT'S COUNTERCLAIMS**
11  DRUGLOGIC, INC.,                     **AND AFFIRMATIVE DEFENSES [Docket
                                          No. 44**]
12         Defendant.
13  _____/
14

15  **I.      INTRODUCTION**

16          Plaintiffs Oracle Corporation and Oracle International Corporation ("Oracle") filed this

17  action against Defendant DrugLogic, Inc. ("DrugLogic") alleging that DrugLogic infringed upon

18  Oracle's U.S. Patent No. 6,684,221 ("the '221 patent"), entitled, "Uniform Hierarchical Information

19  Classification and Mapping System."  Oracle also sought a declaratory judgment of non-

20  infringement upon DrugLogic's U.S. Patent No. 6,789,091 ("the '091 patent") and a declaratory

21  judgment of the invalidity of the '091 patent.  DrugLogic, in turn, has asserted various affirmative

22  defenses and counterclaims.  Before the Court is Oracle's Motion to Dismiss and Strike DrugLogic's

23  Counterclaims and Affirmative Defenses ("the Motion").  In its Motion, Oracle requests that the

24  Court dismiss DrugLogic's Second and Fifth Counterclaims and strike DrugLogic's Third, Fourth,

25  and Fifth Affirmative Defenses and its allegation of willful infringement and prayer for enhanced

26  damages in its First Counterclaim.  A hearing on the Motion was held on August 5, 2011.  For the

27  reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.

28

*United States District Court*
For the Northern District of California

## II.     BACKGROUND

### A.     Facts and Procedural History

On December 17, 2010, DrugLogic filed a complaint against Oracle and Phase Forward, Inc. ("Phase Forward"), a company acquired by Oracle in 2010, in the United States District Court for the Northern District of California, Civil Action No. 10-05771 JCS.  Complaint at ¶ 15.  In that complaint, DrugLogic alleged that Oracle and Phase Forward infringed upon DrugLogic's '091 patent, "Method and System for Web-Based Analysis of Drug Adverse Effects," by making and selling the Empirica Signal product suite.  *Id.* at ¶ 16; *see also* Answer, Affirmative Defenses, Counterclaims and Demand for Jury Trial ("Affirmative Defenses and Counterclaims"), Ex. A ('091 patent).  In addition, DrugLogic alleged that Oracle and Relsys International, Inc. ("Relsys"), a company acquired by Oracle in 2009, infringed upon the '091 patent by making and selling the Argus Perceptive product suite.  Complaint at ¶ 16.  DrugLogic also asserted a breach of contract claim against Oracle arising out of the Co-Marketing and Development Agreement ("the Agreement") between DrugLogic and Relsys.  *Id.*  On February 23, 2011, DrugLogic voluntarily dismissed this Complaint without prejudice.  *Id.* at ¶ 17.

On February 25, 2011, Oracle initiated the instant action by filing a complaint against DrugLogic, alleging infringement of Oracle's '221 patent, "Uniform Hierarchical Information Classification and Mapping System,"  through the design, marketing, manufacture, and/or sale of the Qscan product suite.  *Id.* at ¶¶ 1, 9-10.  Oracle also seeks a declaratory judgment of non-infringement upon DrugLogic's '091 patent and  invalidity of the '091 patent.  *Id.* at ¶ 21.  On April 21, 2011, DrugLogic filed its Affirmative Defenses and Counterclaims.  DrugLogic asserted the following counterclaims against Oracle: 1) infringement of the '091 patent; 2) breach of contract based on the Agreement between DrugLogic and Relsys; 3) declaratory judgment of non-infringement of the '221 patent; 4) declaratory judgment of invalidity of the '221 patent; and 5) declaratory judgment of unenforceability of the '221 patent.  Affirmative Defenses and Counterclaims at ¶¶ 66, 77, 79, 90, 98, 105.

1        Oracle filed the present Motion to Dismiss and Strike DrugLogic's Counterclaims and

2  Affirmative Defenses on May 16, 2011.  DrugLogic opposes the Motion.  On July 7, 2011,

3  DrugLogic filed a Notice of New Authority relevant to its Opposition and attached a copy of *Am.*

4  *Calcar Inc. v. Am. Honda Motor Co., Inc.*, 2011 WL 2519503 (Fed. Cir. June 27, 2011).

5      **B.**    **Relevant Affirmative Defenses and Counterclaims**

6        DrugLogic asserts various affirmative defenses and counterclaims against Oracle.  Below,

7  the Court summarizes the affirmative defenses and counterclaims relevant to the Motion.

8

9        **1.**    **Third Affirmative Defense – Inequitable Conduct and Unenforceability**
               **of the '221 Patent**

10        In its Third Affirmative Defense, DrugLogic alleges that Oracle's '221 patent is

11  unenforceable due to Oracle's inequitable conduct.  Affirmative Defenses and Counterclaims at ¶

12  30.  In particular, DrugLogic alleges that Oracle failed to disclose all non-cumulative, material prior

13  art of which it was aware to the United States Patent and Trade Office ("PTO") during the

14  prosecution of the '221 patent.  *Id.*  DrugLogic asserts that this duty to disclose was owed by Oracle;

15  the purported inventor of the '221 patent, Kim Rejndrup; the attorneys and agents who prepared or

16  prosecuted the '221 patent; and all other persons substantively involved in the preparation or

17  prosecution of the '221 patent.  *Id.* at ¶¶ 31, 32.  DrugLogic states that all individuals with such a

18  duty to disclose provided almost no prior art to the PTO during the prosecution of the '221 patent

19  despite Oracle's awareness of then-existing hierarchical relational medical thesauruses such as

20  WHO-Drug, COSTART, Read Codes, and CPT as well as the "free MeSH database of Medical

21  Subject headings, the Metathesaurus database files of the National Library of Medicine."  *Id.* at ¶ 33.

22  DrugLogic asserts that the only "purported" prior art references provided to the PTO during

23  prosecution of the '221 patent were Oracle marketing documents published after the filing date of

24  the provisional application for the '221 patent.  *Id.*

25        DrugLogic alleges that the specification of the '221 patent states that "[c]ommon vendor-

26  supplied dictionaries" include WHO-Drug, COSTART, and CPT.  *Id.* at ¶ 34.  DrugLogic states that

27  these "vendor dictionaries" are all hierarchical relational medical thesaurus dictionaries, and neither

28                                      3

1   Oracle, the inventor of the '221 patent, Oracle's patent counsel, or any other person substantively

2   involved in the preparation or prosecution of the '221 patent provided copies or excerpts of WHO-

3   Drug, COSTART, or CPT to the PTO. *Id.* at ¶¶ 35, 36.

4        DrugLogic alleges that Oracle and the inventor of the '221 patent, through patent counsel,

5   provided the following brief summary of the invention:

6        The presently claimed system is operable to store and classify a plurality of terms, such as
         clinical or scientific terms according to a hierarchy of relations. The relations define and
7        organize the terms according to more general and more specific terms. In other words, the
         relations may indicate which terms may be subclasses[,] superclasses[,] or synonyms of other
8        terms. Such organization is beneficial in scientific or medical studies where large quantities
         of data are processed and consistency among term usage may not be deterministic.

9

10  *Id.* at ¶ 37. DrugLogic asserts that this statement also describes already-existing hierarchical

11  relational medical thesaurus dictionaries such as WHO-Drug, COSTART, CPT, Unified Medical

12  Language System, Metatheasaurus, and MeSH, at least some of which were known to Oracle, the

13  inventor of the '221 patent, and their patent counsel. *Id.* at ¶ 38.

14       DrugLogic alleges that Oracle and the inventor of the '221 patent also made the following

15  statement to the PTO:

16       Accordingly, the system disclosed herein allows a thesaurus or repository of terms to be
         employed to correlate and normalize research data from a plurality of sources thereby
17       allowing a research team to process such data according to a common denominator referring
         to a particular element drug or compound[,] for example.

18

19  *Id.* at ¶ 39. DrugLogic claims that this statement does not distinguish the '221 patent from already-

20  existing hierarchical relational medical thesaurus dictionaries including WHO-Drug, COSTART,

21  CPT, Unified Medical Language System, Metatheasaurus, and MeSH. *Id.* at ¶ 40.

22       DrugLogic states that the '221 patent was granted after its claims were narrowed to require

23  that it be a thesaurus of clinical terms used in conjunction with a clinical study. *Id.* at ¶ 41.

24  DrugLogic contends that this does not distinguish the '221 patent from then-existing medical

25  thesauruses and that throughout the prosecution of the '221 patent, Oracle, its inventor, and patent

26  counsel all failed to disclose to the PTO that WHO-Drug, COSTART, CPT, Unified Medical

27

28                                              4

Language System, Metathesaurus, and MeSH were all hierarchical relational medical thesaurus dictionaries that contain clinical terms used in conjunction with clinical studies. *Id.* at ¶¶ 41, 42.

Finally, DrugLogic alleges that, on information and belief, Oracle's failure to provide the PTO with copies or excerpts of the WHO-Drug, COSTART, CPT, and MeSH hierarchical relational medical thesaurus dictionaries, and its failure to inform the PTO that WHO-Drug, COSTART, CPT, and MeSH contain clinical terms used in conjunction with clinical studies, constitute intentional acts or omissions done with the intent to deceive. *Id.* at ¶ 43.

### 2. Fourth Affirmative Defense – Other Affirmative Defenses Based on Later Discovered Evidence

As a Fourth Affirmative Defense, DrugLogic reserves all affirmative defenses under Federal Rule of Civil Procedure 8(c) and the Patent laws of the United States as well as any other defenses that may be available in the future based on discovery and further investigation. *Id.* at ¶ 44.

### 3. Fifth Affirmative Defense – Exceptional Case

For its Fifth Affirmative Defense, DrugLogic states that the present case is an exceptional case under 35 U.S.C. § 285. *Id.* at ¶ 45. Accordingly, DrugLogic asserts that it is entitled to attorneys' fees incurred in defending against Oracle's claims. *Id.*

### 4. First Counterclaim – Patent Infringement

DrugLogic's First Counterclaim alleges that Oracle infringed the '091 patent by making, using, importing, selling, or offering to sell its Argus Perceptive product and related products and services. *Id.* at ¶ 69. DrugLogic asserts that as Relsys's successor-in-interest, Oracle is also liable for past infringement by Relsys by making, using, importing, selling, or offering to sell Argus Perceptive. *Id.* at ¶ 70. DrugLogic also argues that Oracle actively induced third parties to infringe the '091 patent by providing, operating and/or promoting and assisting in the use of Argus Perceptive and related products. *Id.* at ¶ 71.

DrugLogic also alleges that Phase Forward infringed the '091 patent by making, using, importing, selling, or offering to sell its Empirica Signal application. *Id.* at ¶ 72. In addition, DrugLogic states that Phase Forward actively induced third parties to infringe the '091 patent by

United States District Court

For the Northern District of California

1   providing, operating, and/or promoting and assisting in the use of Empirica Signal and related

2   products. *Id.* at ¶ 73.

3        DrugLogic alleges that Relsys, Phase Forward, Oracle Systems, and Oracle were aware of

4   the '091 patent and had actual notice of DrugLogic's infringement claims. *Id.* at ¶ 74. DrugLogic

5   contends that Oracle and Phase Forward continued their actions despite an objectively high

6   likelihood that those actions constituted infringement of the '091 patent, and this likelihood was

7   known or should have been known to Oracle and Phase Forward. *Id.* DrugLogic states that it has

8   been injured by this infringement. *Id.* at ¶ 75.

9        Finally, DrugLogic asserts that it is entitled to an enhanced damages award for willful

10  infringement. *Id.* at Counterclaim I, Requested Relief at ¶ D.

11       **5.**     **Second Counterclaim – Breach of Contract**

12       In its Second Counterclaim, DrugLogic alleges that it entered into a Co-Marketing and

13  Development Agreement ("the Agreement") with Relsys, and the Agreement contained a

14  confidentiality provision. *Id.* at ¶¶ 79, 81. DrugLogic alleges that pursuant to the Agreement,

15  DrugLogic provided confidential information to Relsys, including code associated with its

16  pharmacovigilance products. *Id.* at ¶ 83. DrugLogic states that, on information and belief, Relsys

17  breached the Agreement by failing to protect DrugLogic's confidential information and by

18  disclosing and selling that information to "third parties including Oracle." *Id.* at ¶ 85. DrugLogic

19  maintains that it has performed its duties under the Agreement. *Id.* at ¶ 87. DrugLogic asserts that

20  Relsys's breach of the Agreement caused harm to DrugLogic, including loss of sales and loss of

21  market share. *Id.* at ¶ 86.

22       **6.**     **Fifth Counterclaim – Declaratory Judgment of Unenforceability of the**

23                     **'221 Patent**

24       In its Fifth Counterclaim, DrugLogic alleges that the '221 patent is unenforceable as a result

25  of Oracle's inequitable conduct. *Id.* at ¶ 105. DrugLogic asserts that one or more individuals

26  associated with the filing and prosecution of the '221 patent intentionally failed to disclose all non-

27  cumulative, material prior art of which they were aware to the PTO. *Id.* at ¶ 108. In support of this

28

1    counterclaim, DrugLogic repeats the allegations in its Third Affirmative Defense, summarized

2    above.  However, DrugLogic includes additional prior art allegedly withheld from the PTO – "the

3    free database files of the National Library of Medicine denominated today as PubMed" – and does

4    not include Read Codes.  *Id.* at ¶ 112.

### C.    The Motion

6        First, Oracle argues that the Court should strike DrugLogic's Third Affirmative Defense and

7    dismiss its Fifth Counterclaim because DrugLogic has not pled inequitable conduct with sufficient

8    particularity.  Motion at 5.  Oracle argues that under *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

9    F.3d 1312, 1327 n.3 (Fed. Cir. 2009), to state a claim for inequitable conduct that satisfies Federal

10   Rule of Civil Procedure 9(b), a party must allege that material information was withheld from the

11   patent examiner, or misstatements were made to the patent examiner, with the intent to deceive or

12   mislead the examiner into granting the patent.  *Id.*  Oracle states that under this pleading standard, a

13   party must allege facts that give rise to a reasonable inference of the patent applicant's "deliberate

14   decision" to withhold material information from the examiner.  *Id.* at 7.  Oracle also asserts that

15   *Exergen* requires a party to identify the specific who, what, when, where, and how of the material

16   misrepresentation or omission allegedly made before the examiner in order to state a claim for

17   inequitable conduct.  *Id.* at 6-7.

18       Oracle argues that DrugLogic's Affirmative Defenses and Counterclaims fail to meet this

19   standard.  *Id.* at 8.  Oracle asserts that DrugLogic offers no facts to suggest a deliberate decision on

20   the part of Oracle to withhold information from the patent examiner; Oracle argues that in fact it

21   described the allegedly undisclosed prior art in the body of the '221 patent.  *Id.*  Oracle also argues

22   that under *Exergen*, DrugLogic cannot plead the intent to deceive based on information and belief

23   where its pleading sets forth no facts upon which that belief was based.  *Id.*  Finally, Oracle contends

24   that DrugLogic has failed to identify the who, what, where, why, or how associated with its

25   inequitable conduct claim.  *Id.* at 9-11.

26       Second, Oracle argues that the Court should dismiss DrugLogic's Second Counterclaim for

27   breach of contract because DrugLogic fails to allege wrongdoing by Oracle or Phase Forward.  *Id.* at

28                                               7

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

11.  Oracle argues that as Relsys's successor-in-interest, Oracle succeeded to Relsys's rights and benefits under the contract, including access to DrugLogic's information.  *Id.* at 11-12.  Oracle states that therefore DrugLogic has not alleged sufficient facts to establish a breach of contract by Relsys or Oracle as Relsys's successor-in-interest.  *Id.* at 12.  In addition, Oracle contends that DrugLogic fails to allege how Relsys's transferring confidential information to its successor would cause DrugLogic to lose sales or market share.  *Id.*  Finally, Oracle states that DrugLogic has asserted its breach of contract counterclaim against Phase Forward, and this claim should be dismissed as to Phase Forward because Phase Forward has no connection to the Agreement at issue in this case.  *Id.*

Third, Oracle argues that DrugLogic has not stated a claim for willful infringement in its First Counterclaim.  Oracle argues that under *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) and *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1335 (Fed. Cir. 2009), a claim for willful infringement requires a party to plead sufficient facts to support an inference that the infringer acted despite an "objectively high likelihood" that its actions constituted infringement.  *Id.* at 12-13.  Oracle asserts that under *Seagate*, a party must show "reckless disregard" of the opposing party's patents.  *Id.* at 13.  Oracle claims that DrugLogic has made only a "boilerplate assertion" that Oracle was aware of the patent and that the infringement was willful and deliberate.  *Id.*  Oracle argues that these allegations are insufficient to state a claim for willful infringement under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  *Id.*

Finally, Oracle argues that DrugLogic's Fourth and Fifth Affirmative Defenses must be dismissed because they are not actually affirmative defenses.  *Id.*

### D.      The Opposition

First, DrugLogic argues that it has sufficiently pled its breach of contract claim because it has alleged the existence of a contract, DrugLogic's performance, Relsys's breach, and harm to DrugLogic.  Opposition at 3.  DrugLogic argues that it does not merely allege that Relsys breached the Agreement by disclosing and selling DrugLogic's confidential information to Oracle as part of Oracle's acquisition of Relsys.  *Id.*  Rather, Druglogic argues, it also alleges that other third parties

1    were involved in Relsys's breach of the Agreement. *Id.* at 4. In addition, DrugLogic argues that the

2    Agreement requires both parties to obtain the prior written consent of the other party before

3    assigning its rights or delegating its duties under the Agreement. *Id.* at 4-5. Therefore, DrugLogic

4    states, because Oracle has not offered evidence of DrugLogic's written consent, Oracle has not

5    shown that there are no circumstances under which DrugLogic could prevail on this claim. *Id.* at 5.

6    Finally, DrugLogic states that it has not asserted a breach of contract claim against Phase Forward.

7    *Id.*

8        Second, DrugLogic argues that its allegation of willful infringement is sufficient. *Id.*

9    DrugLogic states that it has alleged that Oracle was aware of the '091 patent and had actual notice of

10   DrugLogic's infringement claims. *Id.* at 5-6. DrugLogic asserts that the cases on which Oracle

11   relies, particularly *Seagate*, involved the adequacy of proof at trial, not the adequacy of a pleading.

12   *Id.* at 6. DrugLogic cites additional cases that it believes support its Opposition, including *Rambus,*

13   *Inc. v. Nvidia Corp.*, 2008 WL 4911165 (N.D. Cal. Nov. 13, 2008), in which the court denied the

14   defendant's motion to dismiss the plaintiff's claims of willful infringement and held that it is

15   sufficient to allege that infringement was "deliberate" and in "disregard" of the patents. *Id.* at 8.

16       In support of its argument regarding willful infringement, DrugLogic provides a letter, sent

17   by Dana McDaniel to Ted Cannon on May 12, 2009, which contains a detailed description of the

18   circumstances that led to DrugLogic's concerns regarding infringement of the '091 patent. *Id.* at 8;

19   Exhibit 1 to Declaration of Gabriel I. Opatken in Support of Opposition. DrugLogic argues that

20   although it need not plead evidentiary details, such details exist, as evidenced by this letter. *Id.* at 8-

21   9. DrugLogic also argues that because its allegation of willfulness is "indistinguishable" from

22   Oracle's, and DrugLogic believes that Oracle's pleading is adequate, DrugLogic's pleading is

23   sufficient as well. *Id.* at 9.

24       Third, DrugLogic argues that it has pled inequitable conduct with sufficient particularity. *Id.*

25   at 9. DrugLogic argues that passing mention of the existence of prior art, without providing the art

26   or a detailed explanation of it, suggests that the patentee has intentionally misled the examiner. *Id.*

27   at 10. In support of this argument, DrugLogic cites *Advanced Ion Beam Tech., Inc. v. Varian*

28                                                    9

United States District Court

For the Northern District of California

*Semiconductor Equip. Assoc.*, 721 F. Supp. 2d 62, 79 (D. Mass. 2010), in which the court held that the defendant inventors' brief discussion of a certain reference in the background to the invention revealed that they were aware of its contents and its relevance, and their failure to otherwise bring it to the attention of the patent examiner supported an inference that they intended to mislead the examiner. *Id.* DrugLogic also argues that its allegations provide adequate details to plead the who, what, where, why, and how of the alleged omission, as required under *Exergen. Id.* at 11-12. Regarding the intent to deceive, DrugLogic asserts that it may readily be inferred from the fact that the inventor of the '221 patent and patent counsel mentioned WHO-Drug, COSTART, and CPT in the specification but did not describe them as hierarchical relational thesaurus dictionaries and did not provide copies to the PTO. *Id.* at 12.

Finally, DrugLogic argues that its Fifth Affirmative Defense gives Oracle notice of a particular basis for fees. *Id.* DrugLogic states that the Fifth Affirmative Defense is "harmlessly redundant, and should remain," but states that in the alternative, it is willing to withdraw this defense and rely on its prayer for relief. *Id.* at 13. DrugLogic withdraws its Fourth Affirmative Defense. *Id.*

**E.    The Reply**

First, Oracle reasserts that DrugLogic's Third Affirmative Defense and Fifth Counterclaim do not properly plead inequitable conduct. Reply at 2. Oracle argues that DrugLogic has not adequately alleged the intent to deceive because Oracle not only mentioned the allegedly withheld prior art systems but described them in detail. *Id.* In support of this argument, Oracle directs the Court to portions of the '221 patent.[1] *Id.* Oracle also argues that DrugLogic's theory that it intended to hide from the patent examiner the references that it specifically disclosed is not plausible. *Id.* at 3. Oracle states that DrugLogic's reliance on *Advanced Ion Beam Tech.* is misplaced because that case did not cite *Exergen* and addressed *Walker Process* fraud, not inequitable conduct. *Id.* at 3-4.

---

[1]Oracle states in a footnote that the '221 patent is attached to DrugLogic's Affirmative Defenses and Counterclaims. However, DrugLogic filed only the '091 patent with its Affirmative Defenses and Counterclaims. Oracle attached a copy of the '221 patent to its Complaint.

Oracle repeats its argument that DrugLogic has not properly pled the who, what, where, why, or how of the alleged material omission. *Id.* at 4-5.

Oracle also asserts that granting leave to amend would be futile in this case. *Id.* at 5.  In support of this argument, Oracle relies on the Federal Circuit's recent decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255 (Fed. Cir. May 25, 2011).  *Id.*  Oracle claims that DrugLogic's inequitable conduct claim is the type the Federal Circuit intended to curtail.  *Id.* at 6.

Second, Oracle argues that DrugLogic has failed to plead breach of contract or resulting damages.  *Id.*  Oracle argues that DrugLogic fails to state when or how Relsys disclosed confidential information to Oracle as well as who at Relsys provided such information and who at Oracle obtained it.  *Id.*  Moreover, Oracle asserts, if Relsys was entitled to access DrugLogic's confidential information, Oracle, as successor-in-interest, was also entitled to that information.  *Id.*  In response to DrugLogic's argument regarding the provision in the Agreement requiring written consent prior to assignment, Oracle argues that California law distinguishes between transfers of rights by assignment and succession of rights pursuant to a merger.  *Id.* at 7-8.  Oracle states that DrugLogic has alleged no facts to support a plausible theory that Relysis disclosed or sold confidential information to Oracle other than through the merger.  *Id.* at 8.  Oracle also asserts that DrugLogic has not alleged any facts to support a theory that Relsys disclosed confidential information to "other third parties."  *Id.* at 9.  In addition, Oracle argues that DrugLogic has not alleged sufficient facts to support its allegation of harm.  *Id.*  Finally, Oracle requests that, for the sake of clarity, the Court grant its motion as to Phase Forward as DrugLogic agrees that it has not asserted a breach of contract claim against Phase Forward.  *Id.* at 10.

Third, Oracle argues that DrugLogic does not state a claim for willful infringement under *Twombly* and *Iqbal* and that DrugLogic's reliance on cases decided prior to *Iqbal* is misplaced.  *Id.* Oracle further asserts that its reliance on *In Re Seagate Tech.* and *DePuy Spine, Inc.* is proper; although those cases did not address Rule 12(b)(6) motions, Oracle states that they provide the substantive elements of a claim of willful infringement, which is related to what must be pled to

United States District Court

For the Northern District of California

1  defeat a motion to dismiss. *Id.* at 11. Oracle also argues that DrugLogic inappropriately offers

2  evidence in support of its Opposition. *Id.*

3      Finally, Oracle reasserts that DrugLogic's Fourth and Fifth Affirmative Defenses are not

4  legally cognizable defenses and should be stricken. *Id.* at 12.

5  **III.  ANALYSIS**

6      **A.  Legal Standard**

7          **1.  Motion to Dismiss**

8      Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and

9  plain statement of the claim showing that the pleader is entitled to relief." The complaint must give

10  the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic*

11  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this requirement, the complaint must be

12  supported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "While legal

13  conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory

14  statements are themselves sufficient, and such statements are not entitled to a presumption of truth.

15  *Id.* at 1949-50.

16      Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to

17  state a claim on which relief can be granted. A complaint may fail to show a right to relief either by

18  lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

19  theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

20      In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either

21  direct or inferential allegations respecting all the material elements necessary to sustain recovery

22  under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford*

23  *Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotations omitted; emphasis in original).

24  Together, *Iqbal* and *Twombly* represent "a two-step process for evaluation of motions to dismiss.

25  The court first identifies the non-conclusory factual allegations, and the court then determines

26  whether these allegations, taken as true and construed in the light most favorable to the plaintiff,

27  'plausibly give rise to an entitlement to relief.'" *Fallcochia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d

28

United States District Court

For the Northern District of California

860, 865 (E.D. Cal. 2010) (citing *Iqbal*, 129 S. Ct. at 1950; *Erickson v. Pardus*, 551 U.S. 89 (2007)). Plausibility, as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. At 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## 2. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations omitted; citations omitted). However, motions to strike are generally disfavored. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004).

A Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint or counterclaim. *Id. See also Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020-21 (N.D.Cal. 2009) ("[t]he proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)" (citations omitted)). Where a motion is in substance a motion to dismiss but is improperly labeled a motion to strike, the court may convert it to a motion to dismiss. *Consumer Solutions*, 658 F. Supp. 2d at 1021.

**United States District Court**
For the Northern District of California

1

**B.    DrugLogic's Third Affirmative Defense and Fifth Counterclaim – Inequitable Conduct**

2

3

**1.    Inequitable Conduct Under *Exergen***

4

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated

5

with the filing and prosecution of a patent application made an affirmative misrepresentation of a

6

material fact, failed to disclose material information, or submitted false material information; and (2)

7

the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 fn. 3.

8

*See also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

9

Under *Exergen*, a party must plead inequitable conduct with particularity under Federal Rule

10

of Civil Procedure 9(b).  A pleading that merely recites the substantive elements of inequitable

11

conduct, without providing the specific factual bases for the allegations, is inadequate under Rule

12

9(b).  *Exergen*, 575 F.3d at 1326-27.  Thus, to plead inequitable conduct, a party must identify the

13

specific who, what, when, where, and how of the material misrepresentation or omission committed

14

before the patent examiner.  *Id.* at 1327.  Although knowledge and intent may be alleged more

15

generally, a party must still allege sufficient facts to justify an inference that a specific individual

16

had knowledge of the material information withheld or the falsity of the material misrepresentation

17

and withheld or misrepresented that information with the intent to deceive.  Fed. R. Civ. P. 9(b);

18

*Exergen*, 575 F.3d at 1328-29.

19

In *Exergen*, the court applied this standard and held that the defendant failed to plead

20

inequitable conduct with sufficient particularity.  *Id.* at 1329.  The court noted three factual

21

deficiencies in the defendant's proposed pleading.  *Id.*  First, the pleading failed to name the specific

22

individual who knew of the material information withheld from the PTO and withheld it

23

deliberately, instead referring generally to "Exergen, its agents and/or attorneys."  *Id.*  Second, the

24

pleading did not identify the specific claims, and which limitations in those claims, to which the

25

withheld references were relevant and where in those references material information could be

26

found.  *Id.*  The defendant therefore failed to plead the "what" and "where" of material information

27

allegedly withheld from the PTO.  *Id.*  Finally, the pleading failed to identify the particular claim

28

limitations that were allegedly missing from the information of record. *Id.* The defendant's allegations that the withheld references were "material" and "not cumulative to the information already of record" were insufficient to explain "why" the information withheld from the PTO was material and not cumulative and "how" an examiner would have used the information withheld. *Id.* at 1329-30.

The court in *Exergen* also held that the defendant failed to adequately plead underlying facts to support an inference of knowledge of the material information withheld and the specific intent to deceive the PTO. *Id.* at 1330. Although the defendant alleged that Exergen was aware of the withheld patent references, it failed to allege a factual basis to infer that a specific individual associated with the prosecution of the patent knew of the specific information in those references allegedly material to the claims of the patent at issue. *Id.* The court explained that because references can be quite long, "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.* In addition, the court held that the defendant's allegation of deceptive intent "on information and belief" was insufficient. *Id.* Although a party may plead on "information and belief" under Rule 9(b), the party must still put forth sufficient facts upon which the belief is reasonably based. *Id.* The defendant did not provide any information or plausible reason for its belief, and the circumstances alleged did not suggest a "deliberate decision to withhold a known material reference," a "necessary predicate for inferring deceptive intent." *Id.* at 1330-31 (internal quotations omitted; citation omitted).

### 2. Whether DrugLogic States a Claim for Inequitable Conduct Under the *Exergen* Standard

Oracle argues that the Court should strike DrugLogic's Third Affirmative Defense and Dismiss its Fifth Counterclaim because DrugLogic has failed to plead inequitable conduct with sufficient particularity. Based on the standard set forth in *Exergen*, the Court agrees.

United States District Court

For the Northern District of California

**a.      Who, What, Where, Why, and How of the Alleged Failure to Disclose Material Prior Art**

Regarding the "who" of the alleged material omission by Oracle, DrugLogic alleges that the following persons knowingly failed to disclose material information to the PTO:

- Oracle International;

- Kim Rejndrup, the '221 patent inventor;

- "Each attorney or agent who prepared or prosecuted the application";

- "Every other person who was substantively involved in the preparation or prosecution of the application that became the '221 patent and who was associated with the inventor, with the assignee, or with anyone to whom there was an obligation to assign the application";

- "Every individual having a duty of disclosure under 37 C.F.R. § 1.56"; and

Affirmative Defenses and Counterclaims at ¶¶ 30, 32, 33.  All but one of these categories are quite general and will not suffice on their own under *Exergen*.  However,  DrugLogic does name a specific individual – Kim Rejndrup – and alleges that Mr. Rejndrup was aware of information relating to hierarchical relational medical thesauruses but failed to disclose that information to the patent examiner.  Affirmative Defenses and Counterclaims at ¶ 33.  In *Abaxis, Inc. v. Cepheid*, 2011 WL 1044396, at *3-4 (N.D. Cal. Mar. 22, 2011), the court held that the defendant properly pled the "who" of an alleged material omission by specifically referencing the inventor of the patent because such a reference went beyond the "who" alleged so generally in *Exergen* ("Exergen, its agents and/or attorneys").  This Court finds that DrugLogic has adequately pled the "who" of the alleged material omission with respect to Mr. Rejndrup, but not with respect to any other person.  In any amended complaint, DrugLogic may only name specific, identified individuals, including Mr. Rejnrup.

As for the "what" and "where" of Oracle's alleged failure to disclose material prior art, DrugLogic does not specifically identify any claims of the '221 patent or particular limitations in those claims to which the allegedly withheld references are relevant.  DrugLogic only provides

16

United States District Court

For the Northern District of California

generalized descriptions of the claims of the '221 patent within block quotations of statements allegedly made by Oracle to the PTO during the prosecution of the '221 patent.  Affirmative Defenses and Counterclaims at ¶¶ 37, 39.  Although DrugLogic identifies potentially material information contained in the allegedly withheld references by noting that WHO-Drug, COSTART, Read Codes, CPT, Unified Medical Language System, Metathesaurus, MeSH, and PubMed are all "hierarchical relational medical thesauruses," some of which contain "clinical terms used in conjunction with clinical studies," DrugLogic fails to allege where specifically in those references that material information could be found.  Affirmative Defenses and Counterclaims at ¶¶ 33, 42, 112.  Thus, the Court finds that DrugLogic has not properly pled the "what" and "where" of the alleged material omission.  *See e.g.*, *Abaxis*, 2011 WL 1044396, at *4 (holding that a generic description of claims as including "claims directed to reagant spheres and a process for forming reagant spheres by dispensing uniform, precisely measured drops of a solution into a cryogenic liquid" did not satisfy the requirement that the defendant identify the specific "what" of the material omission); *Server Tech., Inc. v. Am. Power Conversion Corp.*, 2011 WL 1743872, at *3 (D. Nev. May 6, 2011) (holding that the defendant did not satisfy *Exergen* because it failed to identify which claims contained within an alleged prior art reference would limit the patent or prevent its patentability and failed to identify where in the prior art the material claims language could be found).

Regarding the "why" and "how," the Court finds that DrugLogic has stated sufficient facts to explain why the information allegedly withheld is material.  DrugLogic alleges that the descriptions of the invention provided by Oracle and Mr. Rejndrup to the PTO do not distinguish it from then-existing hierarchical relational medical thesauruses that were known to Oracle and Mr. Rejndrup. Affirmative Defenses and Counterclaims at ¶¶ 37-40.  This information is potentially material because a patent examiner may have found it determinative in deciding whether to issue the '221 patent.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255, at *11 (Fed. Cir. May 25, 2011) ("[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art").

17

United States District Court

For the Northern District of California

However, DrugLogic does not allege any facts to support an inference that the information allegedly withheld from the PTO is not cumulative of other information previously disclosed to the examiner, particularly given that Oracle referenced WHO-Drug, COSTART, and CPT in the '221 patent specification.  Accordingly, the Court finds that DrugLogic has not properly pled the "why and "how" of Oracle's alleged failure to disclose prior art.  *See, e.g.*, *Elan Microelectronics Corp. v. Apple, Inc.*, 2010 WL 3069322, at *2-3 (N.D. Cal. Aug. 4, 2010) (granting motion to dismiss an inequitable conduct counterclaim where the defendant alleged sufficient facts to establish materiality but failed to support its conclusion that the material allegedly withheld was other than cumulative).

### b.       Knowledge and Intent

DrugLogic alleges that Oracle and every other individual with a duty to disclose knew at the time of the prosecution of the '221 patent of then-existing hierarchical relational medical thesauruses and "information relating to" those thesauruses.  Affirmative Defenses and Counterclaims at ¶¶ 38, 33.  Oracle's general knowledge of the allegedly withheld references is supported by DrugLogic's allegation that Oracle specifically mentioned WHO-Drug, COSTART, and CPT in the specifications of the '221 patent.  *Id.* at ¶ 34.  However, DrugLogic does not identify the particular "information relating to" these existing technologies of which Oracle was aware.  Under *Exergen*, the Court cannot "assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference."  *Exergen*, 575 F.3d at 1130.  DrugLogic's allegation that Oracle knew of "information relating to" then-existing hierarchical relational medical thesauruses is not sufficient to support an inference that it knew of specific material information contained in the prior art allegedly withheld.

Regarding the intent to deceive, Oracle argues that any allegation of deceptive intent is refuted by the fact that it did in fact disclose WHO-Drug, COSTART, and CPT in the specification of the '221 patent and provided a diagram of WHO-Drug in Figure 2 of the patent.  Motion at 5-6.  DrugLogic, however, argues that passing mention of the existence of prior art, without providing copies or excerpts or a complete explanation to the examiner, raises the inference that the patentee acted with the intent to deceive.  Opposition at 10.  DrugLogic cites *Advanced Ion Beam Tech., Inc.*

18

United States District Court

For the Northern District of California

1   *v. Varian Semiconductor Equip. Assoc.*, 721 F. Supp. 2d 62, 79 (D. Mass. 2010) in support of this

2   argument.  Although that case addressed the requirements for pleading *Walker Process* fraud[2] and

3   did not apply *Exergen*, the court concluded that a brief discussion of an allegedly withheld material

4   reference in a patent specification indicated that the inventors were aware of the contents of that

5   reference and, therefore, its relevance.  *Advanced Ion Beam Tech.*, 721 F. Supp. 2d at 79.  The court

6   held that the failure to disclose that reference in disclosure statements or otherwise bring it to the

7   attention of the patent examiner was sufficient to state a claim that the defendants intended to

8   mislead the examiner.  *Id.*

9        Although this is a close question, the Court finds that if DrugLogic has adequately plead

10   knowledge as described above, no additional pleading will be necessary with respect to deceptive

11   intent under *Exergen*.

12       In its Reply, Oracle argues that leave to amend would be futile in this case.  In support of this

13   argument, Oracle directs the Court to the Federal Circuit's recent decision in *Therasense*, 2011 WL

14   2028255.  The court in *Therasense* did not address inequitable conduct at the motion to dismiss

15   stage and did not discuss leave to amend.  However, Oracle is correct that the court noted that the

16   doctrine of inequitable conduct has become overplayed and has "plagued" both the courts and the

17   patent system.  *Therasense*, 2011 WL 2028255, at *8-9.  Accordingly, the court tightened the

18   standards for proving intent and materiality.  *Id.* at 9.  But the court in *Therasense* did not foreclose

19   all inequitable conduct claims.  It would be inappropriate at the motion to dismiss stage to hold that

20   DrugLogic cannot plead inequitable conduct based on a case that addressed the heightened standards

21   not for pleading but for proving the elements of such a claim.  Because the Court finds that

22   DrugLogic's pleading could be cured by alleging additional facts, the Court GRANTS Oracle's

23

24   _____

25   [2]*Walker Process* fraud is a type of antitrust claim based on an alleged violation of Section 2 of
the Sherman Act.  *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1341 (Fed. Cir. 2007).  It is named after
26   the Supreme Court's decision in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
382 U.S. 172, 177 (1965).  *Id. Walker Process* held that "the enforcement of a patent procured by fraud
27   on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary
to a § 2 case are present."  *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1349 (Fed. Cir. 2007)
28   (quoting *Walker Process*, 382 U.S. at 174) (internal quotations omitted).

Motion to Strike DrugLogic's Third Affirmative Defense and Dismiss DrugLogic's Fifth

Counterclaim but allows DrugLogic leave to amend.

> **C.   DrugLogic's Second Counterclaim – Breach of Contract**

> **1.   Breach of Contract – Applicable State Law**

To state a claim for breach of contract, a party must allege the existence of the contract, the

plaintiff's performance or excuse for nonperformance, the defendant's breach, and damages.  *Walsh*

*v. West Valley Mission Cmty. College Dist*, 66 Cal. App. 4th 1532, 1545 (1998).  Where the

language of a contract is clear and explicit, that language governs the court's interpretation of the

contract.  *Vons Companies, Inc. v. United States Fire Ins. Co.*, 78 Cal. App. 4th 52, 58 (2000) (citing

*Gen. Star Indem. Co. v. Superior Court*, 47 Cal. App. 4th 1586, 1592 (1996)).

> **2.   Whether DrugLogic States a Claim for Breach of Contract**

Oracle argues that DrugLogic has not stated a claim for breach of contract because it has not

adequately pled a breach or resulting harm.  The Court agrees that DrugLogic has not adequately

alleged a breach.

20

United States District Court

For the Northern District of California

The Agreement between Relsys and DrugLogic contains provision regarding assigns and successors, which provides as follows:

> This Agreement and each party's rights, duties and obligations hereunder are personal to the party, and neither party may assign its rights or delegate its duties under this Agreement without the prior written consent of the other party (which shall not be unreasonably withheld). Any attempt to do so shall be void and of no effect. The parties' rights and obligations will be binding upon and inure to the benefit of their respective successors and permitted assigns.

Agreement at § 8.4.[3] DrugLogic alleges that Oracle acquired Relsys in 2009 and is Relsys's successor-in-interest. Affirmative Defenses and Counterclaims at ¶¶ 52, 70 (incorporated by reference into Counterclaim II). As Relsys's successor, Oracle is entitled to Relsys's rights under the Agreement, including potential access to information that DrugLogic considers confidential. Agreement at § 8.4 ("The parties' rights and obligations will . . . inure to the benefit of their respective successors . . ."). The Court finds the language of Section 8.4 of the Agreement to be clear and explicit. Neither Oracle, as Relsys's successor, nor Relsys can be held liable for breach of contract by sharing DrugLogic's information with Oracle if that "disclosure" is Oracle's acquisition of Relsys.

DrugLogic argues in its Opposition that the alleged breaching conduct is not limited to Oracle's acquisition of Relsys and that "other third parties" were involved in Relsys's breach of the Agreement. Opposition at 4. However, DrugLogic has not alleged any facts to make plausible this

---

[3]DrugLogic did not attach a copy of the Agreement to its Affirmative Defenses and Counterclaims. Oracle attached a copy of the Agreement to its Motion. Generally, the Court may not consider material outside the pleadings in ruling on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.* at 454. This "incorporation by reference" rule extends to "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998)). In this case, DrugLogic's Second Counterclaim depends on the contents of the Agreement, some of its contents are alleged in DrugLogic's Second Counterclaim, Oracle has attached the Agreement to its Motion, and neither party has questioned the Agreement's authenticity. Therefore, the Court will consider the Agreement in ruling on Oracle's Motion.

21

United States District Court

For the Northern District of California

1   theory of breach.  DrugLogic fails to allege sufficient facts to support a theory of breach other than

2   that arising from Oracle's acquisition of Relsys.

3          Accordingly, Oracle's Motion to Dismiss DrugLogic's Second Counterclaim is GRANTED.

4   However, because the Court finds that DrugLogic's breach of contract counterclaim could be cured

5   by alleging additional facts regarding disclosure to Oracle or to "other third parties," the Court

6   allows DrugLogic leave to amend.[4]

7          Finally, the Court addresses Oracle's assertion that DrugLogic has brought its breach of

8   contract claim against Phase Forward, a company that Oracle claims has "no connection – alleged or

9   otherwise – to the contract upon which Relsys purports to sue."  Motion at 12.  DrugLogic responds

10  in its Opposition that Counterclaim II has not been asserted against Phase Forward.  Opposition at 5.

11  Because DrugLogic has stipulated that it does not allege breach of contract against Phase Forward,

12  the Court does not rule on the Motion with respect to Phase Forward.

13         **D.      DrugLogic's First Counterclaim – Willful Infringement**

14                 **1.      Willful Infringement of a Patent – Applicable Law**

15         To state a claim for patent infringement, "a patentee need only plead facts sufficient to place

16  the alleged infringer on notice.  The requirement ensures that the accused infringer has sufficient

17  knowledge of the facts alleged to enable it to answer the complaint and defend itself."  *IpVenture,*

18  *Inc. v. Cellco Partnership*, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011) (quoting *Phonometrics,*

19  *Inc. v. Hospitality Franchise System, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)) (internal quotations

20  omitted).

21         To state a claim for willful infringement, the plaintiff must provide "a pleading equivalent to

22  'with knowledge of the patent and of his infringement.'" *Milwaukee Elec. Tool Corp. v. Hitachi*

23  *Koki, Ltd.*, 2011 WL 665439, at *5 (E.D. Wis. Feb. 14, 2011) (quoting *Sentry Prot. Prods. Inc. v.*

24  *Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)) (internal quotations omitted).  Therefore, to

25  

26  _____

       [4]In addition, although the Court finds that DrugLogic has not adequately alleged a breach of the
27  Agreement, the Court finds that DrugLogic has alleged a plausible theory of harm – that Relsys's failure
    to protect its confidential information has resulted in loss of sales and loss of market share.  Affirmative
28  Defenses and Counterclaims at ¶ 86.

United States District Court

For the Northern District of California

1  plead willful infringement, a party must make out "the barest factual assertion of knowledge of an

2  issued patent." *IpVenture*, 2011 WL 207978, at *2.

3            **2.        Whether DrugLogic States a Claim for Willful Infringement**

4            As a preliminary matter, the Court notes that Oracle alternatively requests that the Court

5  strike DrugLogic's allegations of willful infringement and that the Court dismiss these allegations.

6  *See* Motion at 1, 14 (strike); Motion at 13 (dismiss).  A motion to strike is not a proper method to

7  dismiss all or part of a counterclaim.  Wright & Miller, *supra*, at § 1380.  Because the Court finds

8  that Oracle's Motion as to DrugLogic's willful infringement claim is in substance a motion to

9  dismiss, the Court treats it as such.  *See Consumer Solutions*, 658 F. Supp. 2d at 1021.

10           The Court finds that DrugLogic states sufficient facts to support a claim for willful

11  infringement of the '091 patent.  By alleging that Oracle was aware of the '091 patent and had

12  "actual notice" of DrugLogic's infringement claims, DrugLogic has made out a "bare" factual

13  assertion that Oracle had knowledge of the '091 patent.  Affirmative Defenses and Counterclaims at

14  ¶ 74.  In *Sony Corp. v. LG Electronics U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011), the

15  court held that where the plaintiff identified the specific accused products and alleged that the

16  defendant received actual notice of the patents in suit, the plaintiff stated a claim for willful

17  infringement.  In the present case, DrugLogic has identified Argus Perceptive and Empirica Signal

18  as accused products and alleges that Relsys, Phase Forward, Oracle Systems, and Oracle were aware

19  of the '091 patent and had actual notice of DrugLogic's claims.  Affirmative Defenses and

20  Counterclaims at ¶¶ 69, 70, 72, 73, 74.  Similarly, in *Milwaukee Elec. Tools Corp.*, 2011 WL

21  665439, at *5, the court held that "the plaintiffs' allegation that the defendants were aware of the

22  plaintiffs' five patents that the defendants had infringed and continued to infringe upon, is sufficient

23  to plead willful infringement . . ."  In this case, DrugLogic has alleged that Oracle and Phase

24  Forward were aware of the '091 patent and "continued their actions."  Affirmative Defenses and

25  Counterclaims at ¶ 74.  Accordingly, the Court finds that DrugLogic has alleged sufficient facts to

26  support a plausible claim for willful infringement, and Oracle's Motion to Dismiss this allegation is

27  DENIED.

28                                                         23

**United States District Court**
For the Northern District of California

1    Oracle argues that under the Federal Circuit's decision in *Seagate*, 497 F.3d at 1371, to state

2    a claim for willful infringement, a party must plead facts to support a plausible claim that the

3    infringer acted despite an "objectively high likelihood that its actions constituted infringement of a

4    valid patent" and that the infringer acted in reckless disregard of the plaintiff's patents.  Motion at

5    12-13.  However, as DrugLogic points out, *Seagate* addressed the requirements for proving, not

6    pleading, willful infringement.  *See Seagate*, 497 F.3d at 1371 ("to establish willful infringement, a

7    patentee must show by clear and convincing evidence that the infringer acted despite an objectively

8    high likelihood that its action constituted infringement of a valid patent").  Other district courts

9    agree that *Seagate* did not substantively alter the pleading requirements for a willful infringement

10   claim.  *See, e.g.*, *Sony Corp.*, 768 F. Supp. 2d at 1064 ("plaintiff need not allege specific facts

11   establishing objective recklessness under *Seagate*"); *Milwaukee Elec. Tool* Corp., 2011 WL 665439,

12   at *3 ("The defendants' reliance on *Seagate* for purposes of their motion to dismiss pursuant to Fed.

13   R. Civ. P. 12 (b)(6) is misplaced.  Although the defendants properly assert that *Seagate* sets forth the

14   standard for establishing willful infringement, the defendants fail to recognize that *Seagate* is not

15   controlling for purposes of pleading under Fed. R. Civ. P. 8(a)"); *Advanced Analogic Technologies,*

16   *Inc. v. Kinetic Technologies, Inc.*, 2009 WL 1974602, at *2 (N.D. Cal. July 8, 2009) (rejecting

17   defendant's reliance on *Seagate* because it addressed "the 'evidence' necessary 'to establish' willful

18   infringement, not the prerequisites for pleading willful infringement"); *Jardin*, 2009 WL 186194, at

19   *7 ("*Seagate* only addressed what is necessary to prove a claim of willfulness, not whether a

20   plaintiff has sufficiently alleged willful infringement as a pleading matter"); *Rambus v. Nvidia*

21   *Corp.*, 2008 WL 4911165, at *2 (N.D. Cal. Nov. 13, 2008) (rejecting defendant's reliance on

22   *Seagate* because it addressed what is necessary to prove, not plead, a claim of willfulness).

23   Because the Court finds that DrugLogic states a claim for willful infringement, the Court

24   DENIES Oracle's Motion to Strike DrugLogic's prayer for enhanced damages.

25        **E.    DrugLogic's Fourth and Fifth Affirmative Defenses**

26   Oracle argues that DrugLogic's Fourth and Fifth Affirmative defenses should be dismissed

27   because they are not affirmative defenses.  In its Opposition, DrugLogic withdraws its Fourth

28                                        24

Affirmative Defense. The Court finds that the Fourth Affirmative Defense has been withdrawn and need not be addressed.

Oracle states that its Fifth Affirmative Defense is "harmlessly redundant, and should remain"; alternatively, DrugLogic states that it is willing to withdraw this defense and rely on its prayer for relief. The Court finds that the Fifth Affirmative Defense is not a proper affirmative defense under Federal Rule of Civil Procedure 8(c) and is better pled in DrugLogic's Prayer for Relief. *See* Counterclaim I, Requested Relief at ¶ D. Accordingly, the Court GRANTS Oracle's Motion to Strike DrugLogic's Fifth Affirmative Defense.

**IV.     CONCLUSION**

For the reasons stated above, Oracle's Motion is GRANTED IN PART and DENIED IN PART as follows:

1) Oracle's Motion to Strike DrugLogic's Third Affirmative Defense and Dismiss DrugLogic's Fifth Counterclaim is GRANTED with leave to amend;

2) Oracle's Motion to Dismiss DrugLogic's Second Counterclaim is GRANTED with leave to amend;

3) Oracle's Motion to Dismiss DrugLogic's allegations of willful infringement in its First Counterclaim and Strike DrugLogic's prayer for enhanced damages is DENIED; and

4) Oracle's Motion to Strike DrugLogic's Fifth Affirmative Defense is GRANTED.

IT IS SO ORDERED.

Dated: August 8, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge